UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ESAW WRIGHT & DERRAN ALLEN** | **CIVIL ACTION NO. 15-3544** |
| **VERSUS** | **JUDGE ELDON E. FALLON** |
| **SELECTIVE INSURANCE D/B/A SELECTIVE INSURANCE COMPANY OF AMERICA, ET AL.** | **MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR.** |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF RICHARD BARATTA**

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted by Selective Insurance Company of America, R Finn Enterprises, Inc., and Brent Paino ("Defendants"), in opposition to the Motion In Limine to Exclude Testimony of Richard Baratta [Doc. 25] filed by Esaw Wright and Derran Allen ("Plaintiffs").

**BACKGROUND**

This action arises from November 7, 2014 automobile accident that occurred when plaintiff, Esaw Wright, who was driving his girlfriend's 2006 Honda Accord, sped up in an effort to prevent Brent Paino, who was driving a box truck for R Finn Enterprises, Inc., from completing a lane change. In failing to yield to the box truck, the Honda sideswiped the box truck's front bumper, which snagged the Honda's rear bumper cover and pulled it off. As a result of this accident, Esaw Wright and his passenger, Derran Allen, claim to have sustained personal injuries and damages.

In order to reconstruct the accident and determine whether the motion and mechanisms that Plaintiffs would have undergone in the accident could have caused their alleged injuries,

Defendants retained a well-qualified expert in biomechanics and accident reconstruction, Richard V. Baratta, Ph.D., P.E.[1]  Because Plaintiffs can offer no technical or scientific evidence to rebut Dr. Baratta's opinions, they have filed a motion to strike Dr. Baratta, calling into question his qualifications and the reliability of his methods.  Plaintiffs' arguments are without support or merit.

## LAW & ARGUMENT

### A. Plaintiffs' arguments go to the weight of Dr. Baratta's testimony, not its admissibility.

At the outset, Defendants note that Plaintiffs' arguments address the weight, rather than the admissibility of Dr. Baratta's testimony.  "The jury as fact-finder ha[s] the task and responsibility of judging the credibility of the witness, resolving the conflicting evidence, and assessing the weight of the expert testimony."[2]  Indeed, Plaintiffs' arguments that Dr. Baratta did not take into account certain forces or weights or other factors are the very type of arguments the Fifth Circuit has found go "to the weight to be given the opinion by the jury."[3]  And, in such instances, "plaintiff ha[s] ample opportunity to expose such alleged deficiencies in the hypothetical question by cross-examination."

As this Court has held, "the Court's role as a gatekeeper does not replace the traditional adversary system and the place of the jury within that system."[4]  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[5] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be

---

[1] Ex. A, Baratta Report; Exhibit B, Baratta Depo. 10:10-15.
[2] *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 24 (5th Cir. 1974).
[3] *Ullman v. Overnite Transp. Co.*, 563 F.2d 152, 156 (5th Cir. 1977).
[4] *Dearman v. Transocean Offshore Deepwater Drilling, Inc.*, No. CIV.A. 11-750, 2012 WL 441167, at *5 (E.D. La. Feb. 10, 2012) (citing *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 596) (Fallon, J.).
[5] *Id*.

assigned that opinion, rather than its admissibility and should be left for the jury's consideration."[6]

### B. Plaintiffs do not question Dr. Baratta's qualifications as an expert in biomechanics and accident reconstruction.

As the first prong of admissibility, Rule 702 of the Federal Rules of Evidence requires that a witness offering expert testimony be "qualified… by knowledge, skill, experience, training, or education."  Here, Plaintiffs do not object to Dr. Baratta's qualifications as an expert in biomechanics and accident reconstruction—disciplines in which he is highly qualified considering, among other things, he holds a doctorate in Biomedical Engineering, is an ACTAR Certified Accident Reconstructionist, a Registered Professional Engineer, was a professor at Louisiana State University School of Medicine in the Department of Orthopedic Surgery, and has published extensively in medical journals.[7]  Rather, Plaintiffs object to Dr. Baratta giving medical opinions.

Defendants do not dispute that Dr. Baratta is not a medical doctor, and Dr. Baratta readily admits that he's not offering medical opinions in connection with this case.  As he writes in his report:

> <u>The science of injury biomechanics is fundamentally different from that of medicine</u> in that it does not offer diagnoses, treatment or prognoses, but instead addresses the relationships between events and damages to tissue by studying the physics of accidental events, the properties of tissues, and the application of loads to tissues in accidental events. This is a discipline widely accepted within the scientific community; injury biomechanics forms the basis for the safety aspects of vehicle interior design, and for the rules and regulations that govern the crashworthiness of vehicles. In this particular case, the application of biomechanics principles explains the motions of an occupant within the vehicle upon impact, the nature of the loads and mechanisms experienced by the tissue, and the potential for those loads and mechanisms to result in damage or failure.[8]

---

[6] *Id*. (citing *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996)).
[7] Ex. A, Baratta Report 23-36.
[8] *Id*. at 9 (emphasis added).

PD.20106634.2

When asked questions regarding his diagnostic interpretation of Plaintiffs' MRIs, Dr. Baratta testified that he was not qualified to give diagnostic opinions or disagree with the opinions of the treating radiologist and would defer to the treating radiologist.[9] By way of example, when Plaintiffs' counsel asked, "Do you see any signs of degeneration discussed in the radiologist's reports for either Mr. Wright or Mr. Allen," Dr. Baratta responded, "I would say it's a medical question. So, I shouldn't be talking about that."[10] There is no reason to assume Dr. Baratta would be any less forthright when he testifies at trial, where he will no doubt be subject to vigorous cross-examination.

Dr. Baratta, however, is certainly qualified to offer opinions regarding accident reconstruction and biomechanics, which, as noted above, contemplates the "physics of accidental events, the properties of tissues, and the application of loads to tissues in accidental events."[11] Dr. Baratta's conclusions—which include that "the motions of the occupants of the Honda would have experienced would be well within the levels they would undergo within routine activities" and that "the mechanisms associated with causing disc injuries were not invoked in this accident"— are well within his fields of expertise.[12]

**C.   Dr. Baratta's reconstruction and analysis of the accidence is reliable.**

Plaintiffs misrepresent the reliability and extent of Dr. Baratta's accident reconstruction by emphasizing some unimportant and/or cost-prohibitive things Dr. Baratta did not undertake or review as part of his analysis. For instance, Plaintiffs assert that Dr. Baratta did not visit the crash scene (a few blocks from the medical school where he taught for 16 years), speak with the drivers or witnesses (from whom he reviewed statements and sworn testimony), personally

---

[9] Ex. B, Baratta Depo. 27:4-19.
[10] *Id*. at 28:21 – 29:1.
[11] Ex. A, Baratta Report at 9.
[12] *Id*. at 4.

inspect the vehicles (located in another state), perform physical crash testing (not feasible), or use computer modeling (which doesn't model sideswipes well).[13] That is all true. What Plaintiffs neglect to mention is what Dr. Baratta actually reviewed, which includes, <u>but is not limited to</u> the following data, information, and documents:

1. Video taken from the vantage point of the box truck after the accident;
2. Photographs of the Honda taken after the accident
3. A repair estimate for the Honda
4. Autostats dimensional data for the Honda;
5. Schematic diagrams of the bumpers of the Honda
6. Diesel Truck Index data for the box truck
7. Photographs of the box truck
8. Google Street Maps View of the site of the accident
9. The transcript of Mr. Paino's recorded statement
10. The transcript of Mr. Wright's deposition
11. The transcript of Mr. Allen's deposition;
12. Plastic tabs of the bumper of an exemplar Honda; and
13. Data concerning the tensile strength of polyurethane.[14]

Likewise, Plaintiffs take Dr. Baratta's deposition testimony out of context in order to argue that "he did not take into account the weights or speeds of the vehicles when determining the forces undergone by Plaintiffs' vehicle."[15] Not so. In his analysis of the Honda's bumper tab failure, Dr. Baratta calculated the force that it took to pull the bumper and applied that force to the weight of the Honda to calculate acceleration.[16] And, while Dr. Baratta obtained data regarding the weight of the box truck and the Honda, he testified that, when there is a large discrepancy between the weight of the vehicles, the ratio of the weights becomes meaningless.[17]

Similarly, Plaintiffs' claim that Dr. Baratta "only took into account the alleged forces undergone by the vehicle in which the Plaintiffs were travelling," is not accurate.[18] Dr. Baratta's

---

[13] *Compare* Pls. Supp. Mem. 4 *with* Ex. B, Baratta Depo. 15:22 – 16:7.
[14] Ex. A, Baratta Report 11-13; Ex. B., Baratta Depo. 23:2-10.
[15] Pls. Supp. Mem. 5.
[16] Ex. A, Baratta Report 5-6; Ex. B., Baratta Depo. 11:21-12:5.
[17] Ex. B., Baratta Depo. 17:7-23; 23:11-24:1.
[18] Pls. Supp. Mem. 5.

actual testimony was that he did not make specific calculations of occupant kinematics, but compared the forces experienced by Plaintiffs to normative data.[19] In other words, he compared the forces Plaintiffs would have experienced in the alleged accident to activities of daily living, as shown by the diagrams his report.[20] Clearly, this method produces results which are more readily accessible and helpful to a layperson on a jury.

Plaintiffs also attempt misdirection when they argue that Dr. Baratta "did not account for all of the forces at issue in the crash when formulating his opinions."[21] While it is true Dr. Baratta only calculated compressive forces, there is a reason for that. As Dr. Baratta writes in his report, "Only in combined loading, during which the spine is in hyperflexion and subjected to a sudden compressive load, have traumatic disc prolapses from a single event," such as those claimed by Plaintiffs in this case, "been produced."[22] In other words, Dr. Baratta did not calculate shear, bending, or torsional loads because they are not associated with causing the disc injuries claimed by Plaintiffs in this litigation.

Furthermore, it is disingenuous for Plaintiffs to suggest that Dr. Baratta simply looked at some photographs and an exemplar Honda, without more.[23] As Dr. Baratta testified regarding his general methodology:

> Well, specifically the first part of the methodology was to compare the photographs of the vehicles to – to look at the photographs of the vehicles and to look at the configuration of the accident in the accident report, then to examine the type of damage to the vehicles in relation to published literature. And that gave me one part of the reconstruction, which is related to the first or the sideswipe scenario.

---

[19] Ex. B., Baratta Depo. 10:16-19.
[20] Ex. A, Baratta Report 20-22.
[21] Pls. Supp. Mem. 5
[22] Ex. A, Baratta Report 8.
[23] Defendants note that while Dr. Baratta testified that he could not recall the model year of the exemplar Honda as he sat in his deposition, Dr. Baratta's file, which was attached as Exhibit 1 to the deposition, included <u>numerous</u> documents, including a record of the exemplar Honda's vehicle identification number.

> The second methodology was I used engineering principles, specifically failure analysis of the tabs within the back of the Honda. So, I looked at an exemplar Honda and I measured the bumper tabs. And then I looked at the mechanical properties of polyurethane, which is the material of which that bumper cover is made. And then I made calculations of how much force it would take to pull those off. And then I applied that force with a multiplier of two to then estimate what would be the slowing of the Honda once that bumper cover snagged on the bumper of the [box truck].[24]

Dr. Baratta more fully discusses his methodology in his report, which includes reference to at least 26 peer-reviewed publications upon which he relied.[25]

**D.    The cases cited by Plaintiffs for the general proposition that biomechanics experts' opinions are unreliable are distinguishable.**

Plaintiffs cite several cases for the proposition that Dr. Baratta should be stricken because, in general, the opinions of biomechanics experts are not reliable or helpful to the jury. The opinions offered by the experts in those cases, however, differed from those of Dr. Baratta for several important reasons. For example, in *Scineaux v. Empire Fire and Marine Insurance Co.*, the parties proposed to overload the jury by offering the testimony of four liability experts.[26] The court struck all of the experts and, as to the biomechanics expert testimony, noted that defendant failed to demonstrate that expert's opinions were based on reasoning or methodology that was scientifically valid or peer-reviewed.[27] In *Brown v. Regions Insurance, Inc.*, the court struck the defendant's accident reconstruction expert because he proposed to challenge the conclusions of the plaintiffs' treating radiologist without having reviewed any films.[28] Similarly, in *Oaks v. Westfield Insurance Company*, the court struck defendants' liability expert for, among other reasons, he "speaks to both biomechanics and medical causation."[29]

---

[24] Ex. B, Baratta Depo. 11:13 – 12:5.
[25] Ex. A, Baratta Report 11-12.
[26] No. CIV.A.03-2947, 2005 WL 2050281, at *1 (E.D. La. Aug. 9, 2005).
[27] *Id*. at *2.
[28] No. CV 14-813, 2016 WL 4703978, at *3 (E.D. La. Sept. 8, 2016)
[29] No. CIV.A. 13-1637, 2014 WL 198161, at *2 (E.D. La. Jan. 16, 2014)

PD.20106634.2

- 8 -

Here, a review of Dr. Baratta's testimony and report clearly demonstrate that (a) his methodology is valid and peer-reviewed, (b) he has no intention of challenging the diagnoses of plaintiffs' treating physicians, and (c) he does not purport to speak to medical causation.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to strike Dr. Baratta should be denied and Dr. Baratta should be permitted to testify at the trial of this matter regarding his opinions.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   *s/ Jeffrey A. Clayman*
       Mark C. Dodart, (Bar #17549)
       Jeffrey A. Clayman, (Bar #30442)
       Canal Place | 365 Canal Street, Suite 2000
       New Orleans, Louisiana 70130-6534
       Telephone: 504-566-1311
       Telecopier: 504-568-9130
       Email:  dodartm@phelps.com
                 jeffrey.clayman@phelps.com

ATTORNEYS FOR SELECTIVE INSURANCE COMPANY OF AMERICA, R FINN ENTERPRISES, INC. AND BRENT PAINO

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of September, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to persons electronically noticed.

*s/ Jeffrey A. Clayman*
Jeffrey A. Clayman