UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ESAW WRIGHT ET AL. | CIVIL ACTION |
| VERSUS | NO. 15-3544 |
| SELECTIVE INSURANCE ET AL. | SECTION "L" |

**ORDER & REASONS**

Before the Court is a Motion to Exclude the Testimony of Dr. Richard Baratta filed by Plaintiffs Esaw Wright and Derran Allen ("Plaintiffs"). (R. Doc. 25). Defendants Selective Insurance Company of America, R. Finn Enterprises, Inc., and Brent Paino ("Defendants") submitted an Opposition to Plaintiffs' motion. (R. Doc. 26). Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

**I.      BACKGROUND**

This case arises out of injuries allegedly sustained by Plaintiffs on November 7, 2014, in an automobile accident on Interstate 10 near the Claiborne Avenue exit in New Orleans. A box truck owned by NEC Leasing, LLC, leased by Defendant R Finn Enterprises, Inc. ("R Finn") and driven by Defendant Brent Paino allegedly struck the rear of a vehicle owned by Shandreka Foucha that was being operated by Wright, in which Allen was a passenger. Defendants invoke the Court's jurisdiction pursuant to 28 U.S.C. §1332 and demand a jury trial.

Plaintiffs allege that the accident was caused solely by Paino's negligent operation of the box truck while in the course of his employment for R Finn. At the time of the accident, Selective Insurance Company of America ("Selective") provided a policy of automobile liability insurance to R Finn. Plaintiffs seek damages for severe and debilitating injuries sustained in the accident, including for physical and mental pain and suffering, medical expenses, loss of

1

consortium, loss of wages and earning capacity, property damage, and attorneys' fees. (R. Doc. 1-2).

Defendants answer and claim that the Plaintiffs' injuries, if any, were caused in whole or in part by their own negligence or by the negligence of third parties. Defendants also assert that Plaintiffs' injuries were preexisting or were not caused by the accident at issue, and that Plaintiffs failed to mitigate their damages by failing to seek appropriate physical rehabilitation, employment, or re-training to limit their economic losses. Defendants also claim that the Plaintiffs' alleged emotional distress was not reasonably foreseeable and that the damages alleged are too speculative to warrant recovery. (R. Doc. 1-2).

Defendants now seek to use a biomechanical engineer, Dr. Baratta, as an expert witness to testify as to forces exerted on the car and the passengers and to accident reconstruction. Plaintiffs oppose the use of Dr. Baratta as an expert witness.

## II.     APPLICABLE LAW

### A.     *Daubert* Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 is in effect a codification of the United States Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant." *Id*. at 589.

The trial court is the gatekeeper of scientific evidence. *Daubert*, 509 U.S. at 596. It has a special obligation to ensure that any and all expert testimony meets these standards. *Id*. Accordingly, it must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue. *Id*. at 592–93. In making this assessment, the trial court

need not take the expert's word for it. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997). Instead, when expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998).

In satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine after the *Daubert* analysis.

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known. *Daubert*, 509 U.S. at 592–93. In *Daubert*, the Supreme Court set forth a non-exclusive list of factors to consider in determining the scientific reliability of expert testimony. *Id*. at 593–95. These factors are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community. *Id*. Whether some or all these factors apply in a particular case depends on the facts, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999).

In addition to the five factors laid out in *Daubert*, a trial court may consider additional factors in assessing the scientific reliability of expert testimony. *Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999). Some of these factors may include: (1) whether the expert's opinion is based on incomplete or inaccurate dosage or duration data; (2) whether the expert has identified the specific mechanism by which the drug supposedly causes the alleged disease;

(3) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (4) whether the expert has adequately accounted for alternative explanations; and (5) whether the expert proposes to testify about matters growing directly out of research he or she has conducted independent of the litigation. *See, e.g.*, *id.* at 313; *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278–79 (5th Cir. 1998); *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991); *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002). Scientific testimony is relevant only if the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case. *Daubert*, 509 U.S. at 593. However, scientific evidence is irrelevant when there is too great an analytical gap between the data and the opinion proffered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

      The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. *Moore*, 151 F.3d at 275–76. The requirement of reliability does not strictly bind an expert within the proffered field of expertise; an expert may also testify concerning related applications of his or her background. *Slatten, LLC v. Royal Caribbean Cruises Ltd.*, No. 13-673, 2014 WL 5393341, at *2 (E.D. La. Oct. 23, 2014) (citing *Wheeler v. John Deere Co.*, 935 F. 2d 1090, 1100 (10th Cir. 1991). The focus is not on the result or conclusion, but on the methodology. *Moore*, 151 F.3d at 275–76. The proponent need not prove that the expert's testimony is correct, but must prove by a preponderance of the evidence that the methodology used by the expert was proper. *Id.*

      **B.**      **Federal Rule of Evidence 403**

      Under the Federal Rules, relevant evidence is generally admissible, with relevance defined as having any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401, 402.

However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. " 'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note.

### III.     PRESENT MOTION

#### A.     Plaintiffs' Arguments

In their Motion to Exclude, Plaintiffs argue that Dr. Baratta's testimony should be excluded because his testimony is unreliable, he is not qualified to testify, and the testimony will only serve to confuse the jury. (R. Doc. 25-1 at 2).

i. *Dr. Baratta's testimony is unreliable*

Plaintiffs argue that Dr. Baratta's testimony is unreliable for two reasons. First, his opinions and accident reconstruction are based on insufficient facts and data because he did not visit the accident site, inspect the vehicles, or talk to witnesses. (R. Doc. 25-1 at 2). Plaintiffs support this argument by averring that Dr. Baratta was not hired until more than a year-and-a-half after the accident took place, did not visit the crash scene, did not interview any witnesses or drivers, did not inspect either vehicle, did not take necessary measurements, and did not perform any physical or virtual crash reproduction. (R. Doc. 25-1 at 4). Instead, Dr. Baratta relied on pictures and compared the damage to published articles. *Id*. at 5. He also inspected a different Honda Accord, make and year purportedly unknown, and used his findings to draw conclusions about the accident at issue. *Id*.

Second, because Dr. Baratta did not account for factors such as the weight and speed of the vehicles and the impact of lateral forces on the spine while formulating his opinions,

5

Plaintiffs argue his opinions and testimony are unreliable. (R. Doc. 25-1 at 2). Plaintiffs allege that Dr. Baratta only focused on compression forces, but that the Plaintiffs' spines also could have experienced lateral forces that were not taken into account. *Id*. at 5.

Plaintiffs cite to various cases from the Fifth Circuit and the Eastern District of Louisiana wherein the Court excluded expert testimony for being unreliable, beyond the expert's expertise, and unhelpful. *See*, *e.g.*, *Wilson v. Woods*, 163 F. 3d 935, (5th Cir. 1999) (excluding expert testimony and refusing to qualify an expert when he was unable to show expertise in the field, had never conducted accident reconstruction, took no measurements and collected no data from the accident scene, did not examine pertinent parts of the vehicle, and based his calculations on publically-available data); *Oaks v. Westfield Ins. Co.*, No. 13-1637, 2014 U.S. Dist. LEXIS 5687 (E.D. La. Jan. 16, 2014) (finding expert testimony unreliable, beyond his expertise, and unhelpful to the trier of fact when the expert relied on prior testing of different vehicles, assumed certain facts, and sought to testify regarding medical causation); *Scineaux v. Empire Fire & Marine Ins. Co.*, No. 03-2947, 2005 U.S. Dist. LEXIS 17824 (E.D. La. Aug. 9, 2005) (excluding a similar witness because he "failed to conduct any testing, has failed to inspect the vehicles involved, has failed to demonstrate that the proposed opinion is based on reasoning or methodology that is scientifically valid, or that has been peer reviewed"); *Brown v. Regions Insurance, Inc. et al*, Case No. 14-813, Doc. No. 66 (E.D. La. Sept. 8, 2016) (finding insufficiently reliable an expert with both a medical and an engineering degree). Plaintiffs aver that the cited cases are sufficiently similar and support the exclusion of Dr. Baratta's testimony.

    ii.  *Dr. Baratta is not qualified to testify*

Because Dr. Baratta is an engineer and not a medical doctor, he is unqualified to offer medical testimony. Plaintiffs claim that Dr. Baratta reaches beyond his qualifications as an engineer and inappropriately attempts to render medical opinion. (R. Doc. 25-1 at 2). In his

deposition, Dr. Baratta admits that courts have previously limited and excluded his opinions because he is unqualified testify as to medical causation. *Id*. Plaintiffs claim that Dr. Baratta's analysis of the accident goes beyond the scope of engineering and purports to analyze the cause of Plaintiffs' injuries, and is therefore beyond the scope of his expertise. *Id*. at 7-8. Plaintiffs analogize the instant issue with *Oaks v. Westfield*, which held that an engineer was not qualified to testify about Plaintiff's medical condition and that he spoke beyond his expertise when he opined that the force of impact could not have caused the alleged injuries. No. 13-1637, 2014 U.S. Dist. LEXIS 5687 at *1-2. Plaintiffs also look to *Brown*, which excluded medical testimony when the expert had not examined the Plaintiffs or their imaging studies. *Brown*, Doc. 66 at 9. Because he is not a medical doctor, Plaintiffs aver that Dr. Baratta is unqualified to testify as to whether the accident could have caused Plaintiffs' injuries and should be excluded.

    iii. *Dr. Baratta's testimony will confuse the jury*

Finally, Plaintiffs argue that because of the above reasons, Dr. Baratta's testimony will serve to confuse rather than assist the jury in making factual determinations in this case. (R. Doc. 25-1 at 2). Plaintiffs aver that this is a simple collision case and, as in *Oaks v. Westfield Ins. Co.*, the jury will be able to make sound factual determinations without expert testimony. No. 13-1637, 2014 U.S. Dist. LEXIS 5687.

  **B.**   **Defendants' Arguments**

Defendants contend that all of Plaintiffs' arguments go to the weight of Dr. Baratta's testimony, not to its admissibility, and could be dealt with on cross-examination or by the jury itself. (R. Doc. 26 at 2).

    i. *Dr. Baratta's testimony is not unreliable*

Defendants do not argue that Dr. Baratta is qualified to testify as a medical expert. Instead, they point out that the Plaintiffs do not contest Dr. Baratta's actual expertise:

biomechanics and accident reconstruction. (R. Doc. 26 at 3). Dr. Baratta is highly qualified in those fields; he holds a doctorate in Biomedical Engineering, is an ACTAR Certified Accident Reconstructionist, is a Registered Professional Engineer, and was previously a professor at Louisiana State University School for Medicine in the Department of Orthopedic Surgery. *Id*.

Defendants claim that Dr. Baratta testifies within the scope of his expertise and does not attempt to provide medical diagnosis, treatment, or prognosis, but rather assesses the relationship between certain accidental events and tissue damage. *Id*. This field is widely accepted and is relied upon in designing vehicle interior safety. *Id*. Distinct from diagnosis, Dr. Baratta addresses the relationship between forces experienced by victims of accidents as compared to forces experienced through everyday activities. *Id*. Dr. Baratta refused to give medical diagnoses when asked, and Defendants contend there is no reason to doubt he will continue to do so at trial. *Id*.

Defendants also contest Plaintiffs' argument that Dr. Baratta's reconstruction and analysis are unreliable. *Id*. While Plaintiffs list various activities and tests Dr. Baratta did not perform, Defendants argue that he had good reason: those activities were unimportant and/or cost-prohibitive. For example, Dr. Baratta did not perform crash testing because it was not feasible and did not use computer modeling because such models do not effectively model sideswipes. *Id*. at 5. Dr. Baratta also explains that he did not take into account vehicle weight, vehicle speed, or lateral forces because they were not useful or applicable in this case. The ratio of weights between the vehicles in this case, Dr. Baratta argues, are so great as to be rendered meaningless. *Id*. Additionally, he focused on compressive force because that is the type of force that would cause the alleged injuries in this case. *Id*. at 5-6. Finally, Dr. Baratta relied on 26 peer-reviewed publications as well as photos, deposition transcripts, repair estimates, diagrams, and data, among other things, in completing his report. *Id.* at 5, 7.

      ii. *Cases cited by Plaintiffs are distinguishable*

Defendants argue that the cases upon which Plaintiffs rely are distinguishable from the instant case. For example, the court in *Brown* took issue with the expert witness when he challenged the conclusions of Plaintiff's doctor without having looked at Plaintiff's images. *Id.* at 7; *Brown v. Regions Insurance, Inc. et al,* Case No. 14-813, Doc. No. 66 (E.D. La. Sept. 8, 2016). In *Oaks*, the expert addressed medical causation, which Dr. Baratta does not attempt to do. (R. Doc. 26 at 7); *Oaks v. Westfield Ins. Co.*, No. 13-1637, 2014 U.S. Dist. LEXIS 5687 (E.D. La. Jan. 16, 2014). Finally, in *Scineaux*, the parties sought to introduce four separate experts, all of which were seen as an attempt to overload the jury and excluded. (R. Doc. 26 at 7); *Scineaux v. Empire Fire & Marine Ins. Co.*, No. 03-2947, 2005 U.S. Dist. LEXIS 17824 (E.D. La. Aug. 9, 2005). In addition, the biomechanical expert was excluded for failing to demonstrate that his opinions were based on scientifically-proven or peer-reviewed reasoning or methodology. (R. Doc. 26 at 7). Dr. Baratta relied on peer reviewed studies and used scientifically-proven analysis. *Id.* at 7-8. Therefore, because Dr. Baratta's testimony is reliable and is distinguishable from the experts excluded in the above cases, it should not be excluded.

    **C.**     **Analysis**

This Court disagrees with Plaintiffs' contention that Dr. Baratta is not qualified to testify as a biomechanical engineer or accident reconstruction expert. This case is distinct from *Wilson v. Woods* in which the expert had not ever performed accident reconstruction and had little to no experience in the field. 163 F. 3d 935 (5th Cir. 1999). Dr. Baratta has both experience and training in the fields of biomechanical engineering and accident reconstruction, and is sufficiently qualified to testify as an expert in those fields. Further, Dr. Baratta uses generally-accepted and peer-reviewed methodology. The weight of his testimony and the reliability of his analysis is up to the jury to determine.

The Court agrees with Plaintiff, however, Dr. Baratta's testimony should be limited to his area of expertise and because of the methods employed in reconstructing the accident and forces exerted. In their opposition, Defendants include Dr. Baratta's Report of Findings, which includes the five conclusions he reached in the course of his investigation into the accident. (R. Doc. 26-1 at 4).

The Court finds that the fifth conclusion extends beyond that expertise and, as in *Oaks*, seeks to draw conclusions about medical causation. No. 13-1637, 2014 U.S. Dist. LEXIS 5687. Dr. Baratta is not a medical doctor nor is he qualified as a medical expert. Accordingly, this Court finds that Dr. Baratta is not qualified to offer expert testimony about medical causation.

While this Court finds that conclusions one through four are within Dr. Baratta's expertise as a biomechanical engineer and accident reconstructionist, because Dr. Baratta used limited information and data when analyzing the accident, the Court finds that Dr. Baratta's testimony should be limited to conclusion one. Dr. Baratta apparently relied on photographs and other recorded data to make his findings; he did not interview the witnesses or plaintiffs, visit the scene of the accident, take into account road surface or condition, or reconstruct the accident in any way whether digitally or physically. Because of his limited data, conclusions two, three, and four are outside the scope of his research and reconstruction.


### IV.     CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiffs' Motion to Exclude (R. Doc. 25) is **DENIED IN PART AND GRANTED IN PART**. The Motion is DENIED as to Dr. Baratta's expert testimony relating to conclusion one, or any other related testimony. The Motion is GRANTED as to Dr. Baratta's expert testimony relating to conclusions two through five, or any other related testimony which is outside the scope of Dr. Baratta's expertise or his analysis, given the limited data used to form his conclusions.

New Orleans, Louisiana, this 4th day of October, 2016.

_____
UNITED STATES DISTRICT JUDGE